## Case No. 14,972.

### UNITED STATES v. DOBBS et al.

[15 Int. Rev. Rec. 9.]

District Court, N. D. Mississippi.  Dec. Term, 1871.

INTERNAL REVENUE LAW—ILLICIT DISTILLERY.

[1. On a prosecution for conducting a distillery without giving the necessary bond or paying the tax, ignorance on the part of defendants that the bond had not been given or tax paid is no defense.]

[2. The presence of defendants while the distillery was in operation is merely a circumstance to show their connection with it, and will not alone justify a conviction.]

[This was an indictment against Newman H. Dobbs and E. S. Elliott on a charge of illicit distilling.]

G. Wiley Wells, U. S. Dist. Atty.

R. O. Reynolds and Samuel J. Ghoulson, for defendants.

Upon the trial of this cause the following proceedings were had:

After the jury was placed in the box, but before they were accepted by the defendants, defendants' attorneys proposed to challenge peremptorily John Anderson, one of the jurors in the box, which was objected to by the district attorney, who contended that, in the courts of the United States in cases other than those in which the punishment is death, neither party is entitled to challenge a juror except for cause.

HILL, District Judge.  By the common law peremptory challenges of jurors in misdemeanors were not allowed, nor is there any act of congress making such provision.  But by the act of July 20, 1840 (5 Stat. 394), it is provided among other things that for the purpose of conforming as nearly as might be the qualifications, etc., of jurors to those in the state courts, the courts of the United States shall have power to make all necessary rules and regulations for conforming the designation and empanelling of juries in substance to the laws and usages then in force in such state; and further, shall have power, by rule or order, from time to time, to conform the same to any change in these respects which might be thereafter adopted by the legislatures of the respective states for the state courts.  The power and authority to make orders and rules under the provisions of this act in respect to challenges of jurors, whether peremptory or for cause, and in causes both civil and criminal, other than for treason, and those in which the punishment is death, was held and declared by Justice Nelson in case of U. S. v. Shackleford, 18 How. [59 U. S.] 588.  By the provisions of article 297, § 61, c. 64, p. 621, it is provided that in cases not capital the accused shall be allowed four peremptory challenges, and the state two.  That if the rules heretofore adopted by this court do not adopt this provision as a rule of this court, and allow the United States two peremptory challenges, and the accused four, the same is now adopted, and that number of peremptory challenges allowed each party in causes in this court other than the causes provided for by the act of congress.

Whereupon the district attorney challenged peremptorily one, and the defendants two jurors.  The district attorney then introduced Perry Campbell, who testified that he was the assistant assessor of internal revenue for the Third district of Mississippi in the year 1870; that as such assessor he visited distillery No. 2, situated on Horne Lake in said district, and in De Soto county in this judicial district, at various times during the months of February, March, and April of that year; that said distillery was registered in the name of O. H. Pollard, but the business was transacted with

him as such assessor by defendant Elliott; that notice was given for a discontinuance of said distillery; when he went to close it up, he was not furnished with the kind of lock required by the commissioner of internal revenue, but other locks were procured and the establishment locked up; that he visited the establishment on the 23d of May, 1871, when he found the locks broken and the distillery establishment in operation, that defendant Dobbs was in the distillery and gave him some beer to drink, which was taken out of a stand in the house; that he met defendant Elliott, who remarked, "You have caught us, but Pollard has gone to Okolona to execute the bond, and we will make it all right;" that he reported the facts to the assessor, and upon his report the establishment was seized by the collector.

The district attorney then introduced A. P. Shattuck, who testified that he is now and was during the year 1870 assessor of internal revenue for the Third district of Mississippi: That distillery No. 2 is situated on Horne Lake in De Soto county in said district, and had been conducted in the name of O. H. Pollard in the months of February, March, and April, 1870; that he had given the bond and paid the special tax for that time, but had not given notice of his intention to continue or resume said distillery operation after the 1st of May of that year; that O. H. Pollard and defendant Elliott about the 1st of May came to his office and proposed giving bond to resume operations in said distillery; that the bond was filled up, said O. H. Pollard as principal and said Elliott as surety; that he declined to accept and approve the same, when he was asked if Austin Pollard would be sufficient as an additional surety, when he replied that he would. O. H. Pollard said Austin Pollard was in Jackson and he would get him to sign the bond when he returned, that he was expecting his return in a few days, but that the bond was never completed nor was any assessment made or further steps taken in his office.

The district attorney then introduced B. B. Emory, who testified that he was the collector of internal revenue in 1870 for said district; that distillery No. 2 mentioned was conducted in the months of February, March and April in the name of O. H. Pollard; that defendant Elliott transacted all the business connected with his office in relation to said distillery during said time; that no special tax was paid by any one on account of said distillery for the revenue year commencing May 1, 1870; that he seized said distillery June 1, 1870; that he found the still warm, and mash, or beer, in the tubs, and some liquor, which he took to be whiskey, in the still, did not taste it, but it smelled like whiskey; that Dobbs pointed out a number of cattle and hogs, which he said belonged to him individually, and some to Major Wicks, and not to the firm; that he pointed out other property which he said belonged to the distillery; that he understood from both the defendants that they and O. H. Pollard composed the firm doing business in said distillery; that when he seized said distillery he found the ground wet around the still, and saw fresh wagon tracks going immediately from the still.

The district attorney then introduced J. B. Hood, who testified that about June 4, 1870, he took possession of said still as custodian under said Emory as collector and seizing officer; that there was then no whiskey in the cistern, but some mash in the tubs, which he threw out to the stock. It was also in proof that one Franks, one Hunt, and another were engaged as operatives in running said distillery at the time both Campbell and Emory were there after the 1st of May, 1870.

The defendants then offered to read to the jury, as evidence, a deed to the land on which the distillery was situated, to Austin Pollard, and a lease from him to O. H. Pollard, also a distiller's bond given by O. H. Pollard to the United States for the license year ending May 1, 1870, with all other papers on file in the collector's office relating to said distillery, filed by said Pollard during the said license year ending May 1, 1870, to show that prior to May 1, 1871, the ownership of the distillery was in O. H. Pollard. This being objected to by the district attorney, the objection was sustained, and the evidence offered excluded, on the ground that any such ownership could not relieve for acts done after the 1st of May, 1870.

BY THE COURT (charging jury). The defendants are charged in the indictment in three separate counts: 1st. That they, on the 23d day of May, 1870, carried on the business of distillers without having given the bond required by law therefor. 2d. That they on said day carried on the business of distillers without having paid the special tax therefor, as required by law. 3d. That they on said day made mash, wort, and wash, fit for distillation and the production of spirits, in a building other than a distillery authorized by law. To these charges the defendants have plead not guilty, and it is for you to determine from the testimony whether they are or are not guilty of either one or all the charges against them.

All these men are presumed to be innocent until their guilt is established by sufficient testimony. To justify you in finding a verdict of guilty against the defendants, or either of them, the proof must satisfy your minds of the truth of the charges in the indictment; if it does, so that your minds can rest easy upon the conclusion of the truth of charge, you will so find in your verdict. But should it fail to produce such conviction, you will return your verdict of not guilty. If you shall find that one of them is guilty, and the proof not satisfy you of the guilt of the other, you

will return a verdict of guilty as to the former, and not guilty as to the latter; or, if you shall find the defendants guilty of the charge in one count of the indictment, and not guilty as to the others, or either of them, you will so find. All distillers are required to execute the bond as required by law, on the 1st day of May of each year, or thereafter before commencing operation, and to have an assessment made, and pay the special tax, and must also file the proper notice of the time of commencing, and perform all requirements of the law, to authorize commencing distillation in such distillery; and if they commence before such compliance, it creates the offence of carrying on an illicit distillery, and this is substantially the offence charged in the first and second counts; and if mash, wort, and wash were made by the defendants, or either of them, in said building, although it was constructed with all the appertainments prescribed, yet, if the bond had not been given, and the special tax not paid, it was not a legally authorized distillery, and the offence charged in the third count was committed. If the proof satisfies you that the defendants, or either of them, were in any way connected with said distillery, as owners, partners, or employees, in operating said distillery after the 1st of May, 1870, it is incumbent on them to show by proof that the requirements of the law had been fulfilled to authorize such distillation; it was incumbent on them to ascertain whether or not the requirements of the law had been fulfilled to authorize the operation of the distillery; and their ignorance as to whether the bond had been given and tax paid will be no excuse. The presence of the defendants, if you are satisfied from the proof that they were present when the distillery was in operation, is a circumstance to show their connection with it, but, if nothing more is shown, will not be sufficient evidence to justify a conviction; but this circumstance must be taken and weighed with all the other evidence in the cause. If the evidence shows that one of the defendants is guilty of the charge, but does not show which, then you must acquit both. Confessions of a party accused of crime are said in law-books to be the most uncertain kind of evidence; but to constitute confessions a crime must have been charged when the confession is made, which, it is presumed, would alarm and affect the party charged. When admissions are freely and voluntarily made, and in advance of any charge of crime, such admissions are to be considered as any other evidence.

With the punishment annexed to a violation of the law you have nothing to do, nor with any real or apparent hardship, your duty being to determine from all the proof, and nothing else, whether the charges made in the indictment are true or not.

The jury returned a verdict in favor of the United States.